## Martin et al. v. Commonwealth.

November 9, 1948.

H. H. Owens, Willie Rice and John M. Lyttle for appellants.

A. E. Funk, Attorney General, and Armand Angelucci, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Reversing.

Sim Martin, L. P. Martin and Arthur Burkhart were indicted at the May 1947 term of the Clay Circuit Court for the crime of banding and confederating for the purpose of disturbing, alarming, intimidating and injuring Walter Cornett. Upon trial of the case the jury found all the defendants guilty and fixed their punishment at three years in the penitentiary. Since the trial of the case Sim Martin has died and the other defendants, L. P. Martin and Arthur Burkhart, prosecute this appeal

from the judgment of the lower court based on the verdict of the jury.

## Points on Appeal

Reversal is asked on three principal grounds: (1) that there was not sufficient evidence to warrant submitting the case to the jury; (2) errors in the admission of testimony prejudicial to appellants and the exclusion of testimony favorable to them; (3) prejudicial argument of Commonwealth's Attorney; (4) improper instructions to the jury.

I Since the case must be reversed on grounds (2) and (3) above set out, it will be unnecessary for us to analyze the evidence at length under (1). However, we have carefully examined all the evidence introduced by the Commonwealth and by the defense and we are clearly of the opinion that it was sufficient to warrant submitting the case to the jury. Briefly, that evidence tended to establish that defendants went to the home of the prosecuting witness, Walter Cornett, early in the evening of May 14, 1947, and used abusive and threatening language to Cornett and his wife; that they had been drinking and there was evidence that one of them had a pistol which was cocked and pointed down at the feet of Cornett. They left when Cornett ordered them away but Cornett's wife and sister and their children, who feared for their safety should defendants return, left their home to spend the night with a neighbor. Defendants did return later and one of them came onto the porch, tried to open the front door and used abusive language and threats against Cornett. They left when Cornett fired a shotgun over their heads and on leaving, two shots were fired by them, one into the front door of Cornett's store adjacent to his house in which was also located the Post Office of Crawford, Ky. run by Cornett and his wife. The defendants denied all this and testified that their reason for coming to the home of Cornett the first time was to get something to eat and smoke, groceries and cigarettes, from the store; that the last time they came it was to get some smoking tobacco from Cornett's store and that at neither time did they intend to harm anybody in the house and denied that they had any firearms or that they fired any shots. The evidence was quite conflicting and when there is conflicting evidence,

it is for the jury to weigh such evidence and determine the truthfulness thereof. We therefore think appellants' first contention is not well taken.

II and III   If the Commonwealth had confined its proof to charges contained in the indictment and the court had confined the admission of such proof to acts of the defendants in intimidating, alarming or disturbing Walter Cornett, there could have been no just complaint of the testimony and there would doubtless have been sufficient proof to obtain a verdict at the hands of the jury, but we think too much evidence was offered and admitted by the court, upon exceptions thereto, concerning Earl Cornett, brother of Walter Cornett, with whom defendants had had some trouble on the same day of the night on which trouble with Walter Cornett occurred. On that same day some or all of the defendants had been to London, Ky. with Earl Cornett and they had been drinking. Upon their return in a taxi there was a dispute between Earl Cornett and defendant L. P. Martin over $2.00 which Earl claimed L. P. owed him, and about some whiskey. Later all the defendants showed up at Earl Cornett's house and there was evidence introduced that there were threats against the family of Earl Cornett and shots were fired over his house by one of the defendants. There was further evidence admitted over objection to show that on the same day Arthur Burkhart, one of the defendants, was seen talking to Earl Cornett after Arthur had told Earl to ''halt, God damn you'' and further evidence that on the same day Arthur was heard to say he would shoot Earl Cornett if it was the last thing he did. There was other proof admitted concerning the defendant's threats against Earl Cornett and references throughout the testimony to the fact that Earl Cornett was dead at the time of the trial. To make matters still worse, the Commonwealth's Attorney in his closing argument to the jury said, ''Poor Earl is not here to testify, he is dead and gone.'' This statement of the Commonwealth's Attorney in connection with the considerable evidence that was admitted concerning the trouble between Earl Cornett and the defendants was calculated to leave in the minds of the jury the idea that Earl Cornett had met his death at the hands of the de--fendants. We think such proof and the statement of the Commonwealth's Attorney were prejudicial to the de-

fendants. The indictment was for threats and intimidation against Walter Cornett, not Earl Cornett, and evidence concerning the trouble defendants had had with Earl on the same day had no relation to the trouble they had that night with Walter Cornett, who lived some distance from Earl. Such evidence served only to prejudice the jury and had a tendency to cause them to convict the defendants for a crime other than the one for which they were being tried under the indictment. We think the admission of such evidence was highly prejudicial to the defendants and justifies a reversal on this ground.

### Instructions

IV   We do not think that appellants' complaint that the instructions to the jury were incorrect and improper is well taken. Instruction No. 1 as given was substantially the same as instruction No. 1 approved by this court in a similar indictment under this section of the statutes. See Section 837, Stanley's Instructions to Juries. Appellants further claim that under the instructions given, the jury was told to find the defendants all guilty and there was no chance to acquit one of them if it found the evidence so justified. In this appellants are mistaken for the 4th instruction, reading as follows, clearly permits this:

"If you have reasonable doubt from the evidence of the defendants having been proven guilty, then you will find them not guilty. Or if you have a reasonable doubt of either one of the defendants having been proven guilty, then you will find such one not guilty. You may find all three of the defendants guilty or you may find all three not guilty or you may find two of the defendants guilty and one of them not guilty but you cannot find one guilty and the other two not guilty."

We think these instructions were proper and that the jury was given a chance to find any one of them not guilty under these instructions.

### Conclusion

For the reasons herein indicated, the judgment of the lower court is reversed with directions to grant appellants a new trial and for further proceedings consistent with this opinion.

Judgment reversed.